**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

KIMBERLY SELLERS,

     Plaintiff,

     v.                         Civ. Action No: 17-2205 (EGS)

KIRSTJEN NIELSEN, Secretary,
Department of Homeland Security,

     Defendant.

---

## <u>MEMORANDUM OPINION</u>

Kimberly Sellers has worked for the Department of Homeland
Security ("DHS"), Immigration and Custom Enforcement ("ICE") for
over 30 years. She alleges that DHS has subjected her to several
types of discrimination and harassment on the basis of her
gender and care-taker status beginning in October 2013 after she
took leave in connection with the adoption of her daughter. Two
broad categories of discriminatory actions are alleged in Ms.
Sellers' complaint: (1) DHS's gradual removal of Ms. Seller's
substantive responsibilities with the purpose of putting her in
a marginal role; and (2) DHS's denial of several promotions and
other career-advancement opportunities from 2014 to 2017. As a
result of these, and several other alleged acts, Ms. Sellers
brings this action against Kirstjen Nielsen, in her official
capacity as Secretary of DHS ("Defendant or DHS"), alleging

discrimination on the basis of her gender and caregiver status, retaliation, and hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2 *et seq*.

Pending before the Court is defendant's motion for partial judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Upon consideration of the motion, the opposition and the reply thereto, the applicable law, the entire record, and for the reasons stated below, the Court will **GRANT IN PART** and **DENY IN PART** defendant's motion.

## I. Background

The facts set forth in this Memorandum Opinion reflect the allegations in plaintiff's complaint, which the Court assumes are true for the purposes of this motion and liberally construes in the plaintiff's favor. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### A. Factual Background

#### 1. Pre-EEO Investigation Discriminatory Acts

Ms. Sellers is employed by Homeland Security Investigations ("HSI"), an office within ICE, which is a component of DHS. *See* Compl., ECF No. 1 at ¶¶ 1, 6.[1] Beginning in 2008, HSI assigned

---

[1]  When citing electronic filings throughout this Memorandum Opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

Ms. Sellers to the Department of State ("DOS") as a Liaison to the Bureau of International Narcotics and Law Enforcement Affairs ("INL"). *Id.* ¶ 15. While serving as a Liaison in 2013, Ms. Sellers took leave under the Family and Medical Leave Act ("FMLA") in connection with the adoption of her child. *Id.* ¶ 23. Although Ms. Sellers was on leave, she continued to receive emails and calls from her supervisors, requesting that she complete various tasks. *Id.* ¶¶ 24—25. She reminded her colleagues that she was on FMLA leave and caring for her adopted daughter, but nonetheless completed the tasks when others could not because she was expected to do so. *Id.* ¶ 25.

At the conclusion of Ms. Sellers' leave on October 1, 2013, she was prepared to return to her full-time Liaison position. *Id.* ¶ 26. However, two weeks later, on October 15, 2013, she was told that she was being removed as Liaison and would be reassigned to HSI headquarters. *Id.* ¶ 27. This came as a shock to Ms. Sellers because prior to her leave, she had discussions with HSI regarding significant projects, both long and short-term, that she would work on as a Liaison. *Id.* ¶¶ 28-29.

Ms. Sellers was also informed that her duties would be assumed by another employee, Mr. Charles Allen, an employee less qualified for the position. *Id.* ¶¶ 27, 30. She later discovered that Mr. Allen had assumed some of her responsibilities while she was away on leave. *Id.* ¶ 31. Ms. Sellers was officially

instructed to return to HSI headquarters on December 13, 2013, and her Liaison position was given to Mr. Allen. *Id.* ¶¶ 27, 32. Although Ms. Sellers was no longer serving as a Liaison, she remained on the INL team and supported Mr. Allen on his projects. *Id.* ¶ 32.

After Ms. Sellers lost her Liaison position, she suspected that she may have been discriminated against because she used FMLA leave. *Id.* ¶ 54. Accordingly, Ms. Sellers contacted the agency's Equal Employment Opportunity ("EEO") office. *Id.* ¶ 54. She explained that she was demoted immediately after taking FMLA leave and the EEO office advised that, because DHS's actions were potentially a violation of the FMLA, Ms. Sellers needed to report her complaint to the leave office. *Id.* ¶ 55. Ms. Sellers took this advice and filed a complaint with the Office of Special Counsel for violation of her FMLA rights. *Id.*

Over the following year, however, several actions by DHS led Ms. Sellers to realize it was her gender and caregiver status, rather than her choice to take FMLA leave, that motivated the agency's alleged discriminatory conduct as well as its hostile work environment. *Id.* ¶ 56. For example, Mr. Allen treated her in an "increasingly hostile and aggressive manner, which continues to this day." *Id.* ¶ 33. Mr. Allen has menaced Ms. Sellers, telling her "how well he was doing in her job," loomed over her physically, passed needlessly close to her on

numerous occasions, blocked her path, criticized her in public, took credit for her work, and otherwise attempted to intimidate her. *Id.* ¶ 35-38. Additionally, feeling the need to document that he had successfully been appointed to her position, Mr. Allen took photographs of Ms. Seller's personal possessions in boxes when he moved into her office, and emailed their supervisor, gloating about the fact he was taking over her office. *Id.* ¶ 34.

Ms. Sellers reported Mr. Allen's hostility to her supervisor, Ted Lopez, and sought his intervention. *Id.* ¶ 39. Mr. Lopez took no action but rather, blamed Mr. Allen's hostility on Ms. Sellers. *Id.* ¶¶ 40-41. For example, in April 2015, when Ms. Sellers sought out Mr. Lopez's assistance with Mr. Allen's aggressive behavior, Mr. Lopez insisted that Ms. Sellers "drop it." *Id.* ¶ 41. Concerned for her safety, Ms. Sellers asked if it would take Mr. Allen to actually physically assault her before DHS intervened to which Mr. Lopez responded, "that's correct." *Id.* Ms. Sellers was also forced to do administrative and secretarial tasks for Mr. Allen. *Id.* ¶ 44. These duties were far below her grade-level and experience and were an attempt by Mr. Allen and Mr. Lopez to put her in her place as a subordinate to Mr. Allen. *Id.* ¶ 44.

In June 2014, Mr. Lopez informed Ms. Sellers that she was to have no contact with INL whatsoever. *Id.* ¶ 45. Mr. Lopez did

not provide a reason for the no-contact order. *Id.* Seeking a way out of her predicament, Ms. Sellers began applying to other positions. *Id.* ¶ 46. In August 2014, Ms. Sellers applied to two GS-14 positions, Liaison to Europol, and Assistant Attaché to Pretoria, and achieved scores of 99 and 90 respectively for the positions. *Id.* ¶ 47. She was the most qualified of all applicants, however, the positions were given to two male employees. *Id.*

On September 10, 2014, Ms. Sellers was notified that she would be removed from the INL team entirely and her remaining administrative responsibilities would be assumed by Mr. Allen and Mr. Chris Nissen, another employee at HSI. *Id.* ¶ 49. Ms. Sellers often reported her concerns regarding the increased marginalization and lack of responsibilities and duties to Mr. Lopez, but to no avail. *Id.* ¶ 53. Despite Ms. Sellers' many pleas to Mr. Lopez, no changes were made to provide her with any meaningful duties and responsibilities. *Id.* Furthermore, she applied for a detail assignment to the National Security Council ("NSC") in November 2014 but was not selected for that position. *Id.* ¶ 48.

## 2. EEO Investigation and Discriminatory Acts

Disturbed by the fact that her duties had gradually diminished, and her remaining duties were given to two men who were less qualified than she was, Ms. Sellers again contacted

the EEO on October 23, 2014, alleging discrimination on the basis of her gender and status as caregiver to her recently adopted child. *Id.* ¶ 54. Ms. Seller's suspicions that the agency's conduct was motivated by her gender and status as a mother were confirmed soon after when Mr. Lopez told her that the reason her substantive duties were replaced was because she "was caring for her young daughter" and explicitly stated he had his "wife stay at home and take care of all that." *Id.* ¶ 57.

Based on her formal complaint, the agency accepted five claims, three of which are relevant to this action:

> Whether U.S. Department of Homeland Security discriminated against Complainant and subjected her to a hostile work environment on the bases of sex (female) pregnancy and reprisal (prior EEO activity) when the following events occurred:
>
> 1. On August 5, 2013, Complainant was asked to perform significant amounts of work while on leave under the Family Medical Leave Act (FMLA);
>
> 2. On October 15, 2013, Complainant was informed that she was going to be removed as Liaison and was being assigned back to Homeland Security Investigations (HSI) headquarters;
>
> 3. On December 13, 2013, Complainant was instructed to report to HSI, where she was stripped of her Liaison duties and consigned to performing administrative duties.[2]

---

[2] Defendant does not challenge the other two alleged adverse actions which occurred in 2014. Def.'s Mot., ECF No. 1 at 1. Additionally, defendant concedes that Ms. Sellers exhausted her remedies for an alleged hostile work environment claim on the

Statement of Accepted Claims. Def.'s Mot., Ex. B., ECF No. 10-2 at 2. The Statement of Accepted Claims instructed that:

> If you believe that your client's claim has not been correctly identified, please provide to me written clarification within seven (7) calendar days after receipt of this letter, specifying why the claim has not been correctly identified. If a reply is not received within the specified time period, I will consider that you agree with the claim as defined above

*Id.* It is undisputed that Ms. Sellers submitted no clarification. However, in her formal administrative complaint she referenced, among other things, that she was "recently passed over for multiple positions for which she was qualified." ECF No. 10-1 at 6. She expressly referenced the two non-selections for the positions she applied for in August of 2014, the Liaison to Europol and Assistant Attaché to Pretoria positions. *Id.*

While Ms. Sellers' EEOC complaint was working its way through the administrative process, life became worse for her at the agency. Ms. Sellers alleges that throughout the administrative process Mr. Allen became increasingly aggressive towards her and threatened to file a formal complaint if she did not stop "spreading rumors" about him. *Id.* ¶ 59. Additionally, the agency blocked several different attempts by Ms. Sellers to

basis of caregiver status, and retaliation. *Id.*

obtain promotions. She applied for three positions while her
investigation was being conducted: (1) in May 2015, she applied
for an Assistant Attaché to London position, *Id.* ¶ 62; (2) in
2015, on an unspecified date, she applied for a Liaison to U.S.
Customs and Border Patrol position, *Id.* ¶ 63; and (3) in 2015,
on an unspecified date, she applied to a position with DHS's
one-year Master's Program through National Defense University.
*Id.* ¶ 67.

### 3. Post-Investigation Discriminatory Acts

After the conclusion of the investigation, on November 23,
2015, Ms. Sellers applied to at least eight more positions and
was not selected for any of them. In December 2016, she applied
for a detail assignment to the White House Situation Room. *Id.* ¶
65. In 2016, on unspecified dates, she applied for a position as
Liaison to the Office of National Drug Control Policy, *Id.* ¶ 64,
and for a leadership position in the Homeland Security Program,
*Id.* ¶ 68. In May and June 2017, she applied for several detail
assignments to the NSC including Director for Critical
Infrastructure, Director for Cybersecurity, Director for Health
and Development, and Director for Security Screening and
Vetting. *Id.* ¶ 66. Last, on an unspecified date in 2017, she
applied for another Leadership position in the Homeland Security
Program. *Id.* ¶ 68.

In 2017, an administrative judge granted the agency's

motion to dismiss the 2013 claims for failure to make timely contact with an EEO counselor. Def.'s Mot., Ex. D., ECF No. 10-4 at 2. The administrative judge agreed with defendant that the claims that occurred from August 5, 2013, through December 13, 2013, occurred well outside the 45-day regulatory time-frame since Ms. Sellers contacted the EEO on October 23, 2014. *Id.* The Administrative Judge later clarified that the 2013 claims were only dismissed as discrete claims of discrimination but remain part of Ms. Seller's hostile work environment claim. Def.'s Mot., Ex. E., ECF No. 10-5 at 2.

### B. Procedural Background

Ms. Sellers filed this action alleging discrimination, retaliation, and hostile work environment claims, based on her gender and care-giver status. *See* Compl., ECF No. 1. Defendant has moved for judgment on the pleadings as to the three 2013 alleged discrete discriminatory acts, and for all of the non-selection claims. *See* Def. Mot., ECF No. 10. Plaintiff has filed her opposition, ECF No. 13, and defendant has filed a reply, ECF No. 14. The motion is ripe for determination by the Court.

## II. Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion is "functionally equivalent" to a

Rule 12(b)(6) motion and governed by the same standard. *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint*." Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal quotation marks omitted; alteration in original). While detailed factual allegations are not necessary, a plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.*

"The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record*." Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 59 (D.D.C. 2007)(citations omitted). The Court must construe the complaint liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court must not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id.* "Nor must the court accept legal

conclusions cast in the form of factual allegations." *Id.*
"[O]nly a complaint that states a plausible claim for relief
survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662,
679 (2009).

## III. Analysis

Before bringing suit under Title VII, an aggrieved party is
required to timely exhaust his or her administrative remedies.
*See Harris v. Gonzales*, 488 F.3d 442, 443 (D.C. Cir. 2007).
These exhaustion requirements are not jurisdictional, but rather
operate as a statute of limitations defense. *Artis v. Bernanke*,
630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011)(citation omitted).
"Because untimely exhaustion of administrative remedies is an
affirmative defense, the defendant bears the burden of pleading
and proving it." *Bowden v. United States*, 106 F.3d 433, 437
(D.C. Cir. 1997)(citation omitted).

An employee of the federal government who believes he or
she has been subject to discrimination is first required to
"initiate contact" with an EEO counselor within 45 days of the
allegedly discriminatory action. 29 C.F.R. § 1614.105(a)(1). The
45-day period begins to run when an employee has a "reasonable
suspicion" of a discriminatory action. *Adesalu v. Copps*, 606 F.
Supp. 2d 97, 102 (D.D.C. 2009). If the matter is not resolved
informally, the counselor shall inform the employee in writing
of the right to sue, and the employee must file a formal

complaint of discrimination with the agency. *See* 29 C.F.R. §§ 1614.105(d), 1614.106(a)-(c). The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge. *See* 29 C.F.R. §§ 1614.106(e)(2), 1614.108(f). A complainant may file a civil action within ninety days of receiving a final decision from the agency or after a complaint has been pending before the EEOC for at least 180 days. *See* 42 U.S.C. § 2000e–16(c); 29 C.F.R. § 1614.407; *Price v. Bernanke*, 470 F.3d 384, 389 (D.C. Cir. 2006).

Critically, an employee must exhaust the administrative process for each discrete act for which he or she seeks to bring a claim. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002). In *Morgan*, the Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. This is because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [45]-day time period after the discrete discriminatory act occurred." *Id.*

**A. 2013 Adverse Acts**

The parties agree that because at least one of Ms. Seller's allegations of discrete discriminatory acts, *i.e.*, the 2014 acts, fall within the 45-day window, the Court may consider all

of the alleged acts as part of Ms. Seller's hostile work
environment claim. *See* Def.'s Mot., ECF No. 10 at 12 n.2
(stating the agency does not challenge, at this stage, the 2013
claims offered in support of a hostile work environment claim).
Where the parties disagree is whether Ms. Sellers' timely
exhausted her remedy for the discrete discrimination claims that
occurred in 2013. The two acts in dispute are as follows: (1) On
October 15, 2013, Ms. Sellers was informed that she was going to
be removed as Liaison and assigned back to Homeland Security
Investigations (HSI) headquarters; and (2) on December 13, 2013,
Ms. Sellers was instructed to report to HSI, where she was
stripped of her Liaison duties and assigned administrative
duties.[3]

A plaintiff does not have a claim for discrimination unless
and until she suffered from "adverse action." *See Czekalski v.
Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007). Pursuant to EEOC
Regulation 29 C.F.R. § 1614.105(a)(1), a complainant must
ordinarily contact an EEOC counselor within 45 days of the date
of the matter alleged to be discriminatory. Again, the 45-day

---

[3] Defendant argues that all three 2013 acts are in dispute.
However, Ms. Sellers clarified in her opposition that she did
not bring the issue relating to DHS's request for her to work
while on FMLA leave as a discrete act in her discrimination or
retaliation counts but rather only raised that issue as part of
her hostile work environment claim. Pl.'s Opp'n., ECF No. 13 at
17 n.2. Accordingly, there are only two discrete acts relevant
to this motion.

period begins to run when an employee has a "reasonable suspicion" of a discriminatory action. *Copps*, 606 F. Supp. 2d at 102.

It is undisputed that Ms. Sellers first contacted an EEO counselor on October 23, 2014, and therefore, she only timely exhausted "discrete discriminatory act[s]" of which she had a reasonable suspicion that occurred within 45 days of this date. *See* 29 C.F.R. § 1614.105(a)(1). Accordingly, this Court may review any conduct that occurred on or after September 8, 2014, 45 days before Ms. Sellers made initial contact. *See Morgan*, 536 U.S. at 110. However, whether Ms. Seller's 2013 claims fall outside the 45-day window depends on how the discrete acts are characterized.

Defendant argues that the dates on which the discrete acts occurred were October 15, 2013, for Ms. Seller's removal from the Liaison position and reassignment to HSI headquarters; and December 13, 2013, for the removal of her Liaison duties and assignment to administrative tasks. Def.'s Mot., ECF No. 10 at 10. Ms. Sellers argues that the removal from the Liaison position and the removal of her substantive duties were the initial steps in a multi-step process which culminated in an adverse action on September 10, 2014, when she was removed from the INL team and her INL duties were given to less-qualified men. Pl.'s Opp'n., ECF No. 13 at 19.

15

Taking all inferences in Ms. Seller's favor, at this stage of the proceedings, the Court cannot say that as a matter of law she did not timely make initial contact with the EEO counselor. Cases in this District illustrate the difficulty in determining when an adverse action occurs where the basis for the claim is the removal of substantive duties. *See, e.g., Kline v. Archuleta*, 102 F. Supp. 3d 24, 30 (D.D.C. 2015)("Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances.'"). In *Kline* for example, the court held that the plaintiff's allegations that she was stripped of her regular duties and that she was assigned only "menial, clerical and/or administrative duties" were not sufficient to meet the threshold of an adverse action under Title VII. 102 F. Supp. 3d at 31. After engaging in a fact-intensive inquiry, which included the plaintiff's precise duties prior to her reassignment, the court found that taking all evidence in the plaintiff's favor no reasonable jury could find that there was an adverse action. *Id.* at 31–34.

This case stands in stark contrast to *Kline* because there simply is not enough information at this juncture to determine when the adverse employment action occurred. Unlike a claim for wrongful termination, where there is a set date for the adverse

employment action and a fixed event such as a firing, a material adverse reassignment depends "on the circumstances of the particular case . . . and should be judged from the perspective of the reasonable person in the plaintiff's position, considering all the circumstances." *Kline*, 102 F. Supp. 3d at 30. The Court agrees with the plaintiff that "[f]urther factual development is necessary to determine exactly what duties were removed and when, how her position description changed over time, what the precise nature of her role was, [and] what duties she was tasked with during the ensuing months" before the Court may rule as a matter of law she failed to exhaust her remedies.[4] Pls.' Opp'n., ECF No. 13 at 20. It is the defendant's burden to plead and prove untimely exhaustion of administrative remedies. *Bowden*, 106 F.3d at 437 (citation omitted). The defendant has failed to do so at this stage of the proceedings.

Additionally, the Court is not convinced that Ms. Sellers should have reasonably suspected she was being discriminated against because of her gender and care-giver status in 2013. Under Title VII, "if an employee did not at the time know or have reason to know that an employment decision was

---

[4] The parties agree that this conduct is part of the hostile-work environment claim, so the parties will need to take discovery on this issue regardless of whether it will ultimately survive as part of her discrete discriminatory act claims.

discriminatory in nature, the time limits for filing an administrative complaint may be tolled." *Loe v. Heckler*, 768 F.2d 409, 418 (D.C. Cir. 1985)(internal citation omitted). "The time within which EEO counseling must be sought is likewise tolled until the claimant knows or has reason to know the facts that would support a charge of discrimination." *Id.* (citations omitted).

In this case, Ms. Sellers was first told by the agency that she was to file her complaint with the Office of Special Counsel because she likely had a claim for violations of the FMLA. *See* Compl., ECF No. 1 ¶ 55. This is understandable because the alleged discrimination occurred as Ms. Sellers took her FMLA leave: she was removed from the Liaison position after she returned from FMLA leave and alleges that the removal process began while she was on leave. *Id.* ¶¶ 27, 31. Construing all inferences in Ms. Sellers favor, it was not until the following year—after being continually stripped of substantive duties that were given to less qualified men—that she reasonably knew that DHS's actions were motivated by her gender and her status as a caregiver. Specifically, when, on September 10, 2014, she was removed from the INL team entirely. Because the October 23, 2014 EEO contact occurred within 45 days of the September 10, 2014 date, the Court cannot say at this stage of the proceedings that she did not exhaust her administrative remedies as a matter of

law.

Accordingly, the Court **DENIES** the defendant's motion for judgment on the pleadings as to Ms. Seller's discrimination claims related to the 2013 adverse acts, and Ms. Sellers' claims for discrimination based on the 2013 adverse acts may proceed.

## B. Non-selection Claims

The parties agree that the non-selection claims are best analyzed under three categories: (1) two non-selections occurring in 2014 prior to Ms. Sellers filing her formal charge of discrimination with the EEO; (2) three non-selections that occurred after Ms. Sellers filed her formal charge of discrimination with the EEO, but before the EEO concluded its investigation, and (3) six non-selections that occurred after the EEO concluded its investigation. The Court addresses each claim in turn.

### 1. 2014 Pre-EEO Complaint Non-Selections

The first two non-selection claims concern two positions that Ms. Sellers applied for in August 2014. Defendant argues that these non-selections should be dismissed because Ms. Sellers did not give the agency an opportunity to investigate those claims when she failed to challenge the Agency's Statement of Accepted Claims which excluded the non-selections. Def.'s Mot., ECF No. 10 at 13. Ms. Sellers argues that the non-selections were included in her formal charge and it is the

formal complaint that governs, not the agency's informal statement of accepted issues. Pl.'s Opp'n., ECF No. 13 at 34.

Defendant acknowledges that Ms. Sellers raised the two August 2014 non-selections in her formal administrative complaint, but faults her for failing to correct the agency when it did not include these two non-selections in its Statement of Accepted Claims. Def.'s Mot., ECF No. 10 at 13. Because she failed to correct the Statement of Accepted Claims, defendant argues, Ms. Sellers has failed to exhaust her administrative remedies. *Id.* In support of its position, defendant cites several cases in which courts have adhered to the general rule that "failure to respond to the [agency]'s framing of the issue supports a finding that a plaintiff has failed to exhaust his administrative remedies with respect to those claims not approved by the EEO." Def.'s Reply, ECF No. 14 at 12. Review of these cases, however, reveals that courts in this District have not taken such a hardline approach.

For example, in *McKeithan v. Boarman*, 803 F. Supp. 2d 63, 68 (D.D.C. 2011), a plaintiff not only failed to respond to the EEO's letter that omitted his alleged gender and religion discrimination claims, but had filed an affidavit affirmatively stating that he was "discriminated against and subjected to a hostile work environment 'based on [his] age.'" Despite those facts, the court found that plaintiff only "*arguably* abandoned

[the claims based on Sex and Religion] . . . by failing to contest the EEO's framing of his complaint and by *affirmatively stating that the actions taken against him were because of his age*." *Id.* The court noted that although those actions "may well constitute ground for dismissal," it declined to "adopt such a rigid position" and dismissed the claims on other grounds. *Id.* Here, Ms. Sellers has not affirmatively limited her discrimination claims to the removal of her substantive duties. And even if she had, the Court is persuaded by *McKeithan* that such a "rigid position" is not mandated by the statute or regulation. *Id.*

Defendant also relies on *Robinson v. Chao*, 403 F. Supp. 2d 24, 28 (D.D.C. 2005), but that case is inapposite. In *Robinson*, the plaintiff failed to respond to requests for additional information about certain of her discrimination claims. *Id.* There, the EEO sent the plaintiff a formal request for additional information so it could determine if certain claims would be accepted for investigation. *Id.* at 27. The EEO warned plaintiff that "her failure to respond within 15 calendar days could result in dismissal of the additional claims." *Id.* Because plaintiff failed to respond to the formal request, the court held that plaintiff did not fulfill her obligation to respond to reasonable requests in the course of the agency's investigation of her claims, and therefore failed to exhaust her

administrative remedies as to those claims. *Id.* at 29.

However, a "failure to cooperate during the administrative investigation must be treated as factually and legally distinct from failure to respond to the acceptance-of-claims letter." *Mokhtar v. Kerry*, 83 F. Supp. 3d 49, 66 (D.D.C. 2015). In *Mokhtar*, the district court explained that acceptance-of-claims letters are "more akin to an elective agency housekeeping procedure" rather than "a legally mandated aspect of the administrative fact-finding investigative process." *Id.* Indeed, a complainant need not respond to an acceptance-of-claims letter for the agency to investigate his or her claim. *Id.* In contrast, under 29 C.F.R. § 1614.107(a)(7), an agency "shall dismiss" a complaint if the agency has sent to the complainant "a written request to provide relevant information" and a complainant fails to respond to that request, provided that "the request included a notice of the proposed dismissal." The acceptance-of-claims letter sent to Ms. Sellers was not a formal written request for information, and it contained no requirement that Ms. Sellers respond to the letter for the agency to begin the investigation. In light of these differences, the Court cannot conclude that the failure to respond to an acceptance-of-claims letter is tantamount to a failure to cooperate in the investigative process.

Defendant responds with several reasons for why rejecting

its rigid rule would lead to bad administrative policy. Defendant argues that complainants would have an incentive to file vague claims and leverage an oversight by the agency to functionally expand those claims when they sued in federal court. The Court is not persuaded. This is not a case in which Ms. Sellers alluded to a general failure to select her for some unnamed position at some undisclosed time, both August 2014 non-selections were named by position and date in her formal complaint to the agency. Def.'s Mot., Ex. A., ECF No. 10-1 at 6. This is also not a case in which a plaintiff fails to allege a particular type of discrimination (e.g., race) or claim (e.g., retaliation), and later brings that type of claim in federal court. Such a case would surely fail on exhaustion grounds. *See McKeithan*, 803 F. Supp. at 67 (dismissing retaliation claim for failure to exhaust when plaintiff failed to include it in his administrative complaint or any allegations that could be construed as a retaliation claim).

This Court does not believe that the hardline approach suggested by the defendant is appropriate as a matter of law in this case. Ultimately, the fact that the agency itself omitted the non-selections that were clearly referenced in the formal complaint from its statement of accepted issues does not bar the claims from this case. The agency was free to send a formal request for more information about those claims, but it failed

to do so. *See generally Robinson*, 403 F. Supp. 2d at 28
(dismissing claims because of plaintiff's failure to respond to
formal written request for additional information). Ms. Sellers
presented the 2014 non-selection claims in her charge of
discrimination and this was all she was required to do. *See*
*Mokthar*, 83 F. Supp. 3d at 65 (stating there is no statutory or
regulatory requirement for a plaintiff to respond to an
acceptance-of-claims letter within a certain time to avoid
waiving plaintiff's claims).

Accordingly, the Court **DENIES** defendant's motion for
judgment on the pleadings as to the 2014 non-selection claims,
and Ms. Sellers may proceed on her claims that she was
discriminated against based on gender and caregiver status when
she was not selected for two positions in August 2014.

### 2. 2015 Post-Charge Non-Selections

The next category of non-selections relate to three
positions Ms. Sellers applied for after she filed her complaint
but prior to the conclusion of the investigation. These
positions were: (1) an Assistant Attaché to London position she
applied for on May 2015; (2) a Liaison to U.S. Customs and
Border Patrol position she applied for at an unspecified time in
2015; and (3) a position through DHS's Master's Program through
National Defense University, she applied for at an unspecified
time in 2015. Ms. Sellers alleges that she was not selected for

these positions based on: (1) gender and care-giver status; and
(2) in retaliation for filing a complaint with the EEO. Pl.'s
Opp'n., ECF No. 13 at 29. It is undisputed that Ms. Sellers
failed to initiate EEO contact when these non-selections
occurred. *Id.* However, Ms. Sellers argues that she was not
required to do so once she initiated the EEO process, because
the post-charge non-selections were reasonably related to the
two non-selections cited within her formal complaint. *Id.* at 36.

Defendant argues that Ms. Seller's discrimination and
retaliation claims for these non-selections should be dismissed
for slightly different reasons. First, defendant argues that Ms.
Seller's discrimination claim for these three non-selections is
foreclosed by this Court's decision in *Nguyen v. Mabus*, 895 F.
Supp. 2d 158 (2012). In *Nguyen*, this Court granted summary
judgment to the defendant on plaintiff's discrete acts of
discrimination claims for failure to exhaust administrative
remedies. *Id.* at 172-73. Relevant to this case were three acts
of non-selection which occurred after the investigation began
and more than 45-days after the plaintiff contacted the EEO. *Id.*
The Court found that the three acts of non-selection were
discrete acts of alleged discrimination and because the
plaintiff did not contact the EEO about these acts within 45-
days of when they occurred they were not timely exhausted and
therefore procedurally barred. *Id*. at 173.

Defendant is correct that "courts should not treat individual incidents of alleged discrimination as part of a discriminatory pattern for exhaustion purposes." *Id.* at 172 (citing *Morgan* 536 U.S. at 114). Under *Morgan*, a plaintiff who alleges discrete acts of discrimination must initiate EEO contact for every act which falls outside the 45-day window. 536 U.S. at 114. Ms. Sellers failed to do so for her post-charge non-selection claims which did not occur within 45-days of the October 24, 2014, EEO contact, and therefore did not exhaust her remedies for her discrimination claims as to these three non-selections. Accordingly, Ms. Sellers may not proceed with these three non-selection claims under her theory of discrimination.

As to the retaliation claim, defendant recognizes that whether a plaintiff needs to exhaust post-charge retaliation claims remains an open question for this Court. After the Supreme Court's decision in *Morgan*, this Court has required plaintiffs to exhaust their administrative remedies with respect to each discrete act of discrimination. Several courts in this District, however, have distinguished retaliation claims that arise after a plaintiff has filed an administrative complaint, holding that separate exhaustion is not required for those later acts of retaliation that would have come within the "scope of any investigation that reasonably could have been expected to result from [the] initial [administrative] charge of

discrimination." *Hazel v. Wash. Metro. Area Transit Auth.*, No. 02-1375, 2006 WL 3623693, *8 (D.D.C. Dec. 4, 2006) (relying on *Wedow v. Kansas City*, 442 F.3d 661, 673-74 (8th Cir. 2006) and *Lane v. Hilbert*, No. 03-5309, 2004 WL 1071330, *1 (D.C. Cir. May 12, 2004)); *see also Jones v. Bernanke*, 685 F. Supp. 2d 31, 37 (D.D.C. 2010); *Thomas v. Vilsack*, 718 F. Supp. 2d 106, 121 (D.D.C. 2010); *Smith-Thompson v. Dist. of Columbia*, 657 F. Supp. 2d 123, 137 (D.D.C. 2009); *Lewis v. Dist. of Columbia*, 535 F. Supp. 2d 1, 6-8 (D.D.C. 2008).[5] This Court has followed this approach and has required claims of retaliation to be administratively exhausted unless they were (1) related to the claims in the initial administrative complaint, and (2) specified in that complaint to be of an ongoing and continuous nature. *See Nguyen* 895 F. Supp. 2d at 184. Because exhaustion of administrative remedies is an affirmative defense, defendant bears the burden of pleading and proving it. *Bowden*, 106 F.3d at 437.

With respect to the three non-selection claims under the retaliation theory, defendant argues that the non-selection claims at issue are not reasonably related to the claims in the

---

[5] The D.C. Circuit has declined to weigh in on this split. *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010)("We need not decide whether *Morgan* did in fact overtake that line of cases [that permits federal employees to litigate unfiled retaliation claims that are like or reasonably related to claims they did file with the agency].").

administrative complaint because Ms. Seller's administrative complaint failed to "describe the same conduct and implicate the same individuals." Def.'s Mot., ECF No. 10 at 16–17 (quoting *Craig v. District of Columbia*, 74 F. Supp. 3d 349, 366 (D.D.C. 2014)). In other words, there were no allegations that the "selecting officials for the vacancies were the same as those who allegedly discriminated against and harassed [Ms.] Sellers." *Id.* at 16.

However, this argument supports plaintiff's position more than that of the defendant. Defendant bears the burden of proving that the plaintiff failed to exhaust and "the incompleteness of the factual record prevents the court from determining [at the pleadings stage] whether the allegations in question were 'of a like kind' to the retaliatory acts alleged in the EEOC charge." *Smith-Thompson v. District of Columbia*, 657 F. Supp. 2d 123, 137-38 (2009). Given the number of factual issues that remain unresolved, the Court cannot conclude, on the basis of the pleadings alone, that the plaintiff failed to exhaust her administrative remedies. The record requires factual development, and therefore defendant cannot carry its burden to prove Ms. Sellers did not exhaust her claims on the pleadings as to the retaliation claim for the post-charge non-selections.

Accordingly, the Court will **GRANT** defendant's motion for judgment on the pleadings as to Ms. Seller's 2015 post-charge

non-selection discrimination claims and will **DENY** defendant's
motion for judgment on the pleadings as to Ms. Seller's 2015
post-charge non-selection retaliation claims. Ms. Sellers may
proceed on her claim that she was not selected for the three
positions in 2015 in retaliation for filing her formal charge of
discrimination with EEO.

### 3. 2016-2017 Post-Investigation Non-Selections

The last category concerns several positions for which Ms.
Sellers applied that post-date the conclusion of the
investigation. Ms. Sellers concedes that binding authority in
this jurisdiction has held that acts that occur after an
investigation has concluded must be separately exhausted. Pl.'s
Opp'n., ECF No. 13 at 42; *see Payne v. Salazar*, 619 F.3d 56, 65
(D.C. Cir. 2010)(dismissing claim concerning retaliatory conduct
in January 2008 because it "could not possibly have arisen from
the administrative investigation" that "ended in September
2007"). Ms. Sellers argues, however, that the post-investigation
conduct may still be considered as part of her hostile work
environment claim. *Id.*

Defendant makes two arguments against allowing such claims
to be considered as part of a hostile work environment claim,
one general to all non-selection claims, the other specific to
Ms. Seller's post-investigation claims. The general argument is
that all non-selection claims may not be considered as part of a

hostile work environment claim because they are "discrete events that occur at a specific time [and] do not constitute initimidat[ion] ridicule, or insult." Def.'s Mot., ECF No. 10 at 13-14 (citing *Morgan*, 536 U.S. at 114). The specific argument with regard to her post-investigation non-selection claim is that Ms. Sellers is attempting to bootstrap her concededly unexhausted non-selection claims into a catch-all hostile work environment claim. Def.'s Reply, ECF No. 14 at 21.

As to defendant's general argument that non-selection claims may not be part of a hostile work environment, *Morgan* has made clear that, with regard to hostile work environment claims, "plaintiffs may incorporate non-exhausted allegations into a hostile work environment claim so long as some allegations were exhausted and all of the allegations together form one hostile environment claim." *Nguyen*, 895 F. Supp. 2d at 187 (citing *Morgan*, 536 U.S. at 115). The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has confirmed this view in *Baird v. Gotbaum*, 662 F.3d 1246 (D.C. Cir. 2011). In *Baird*, the D.C. Circuit explained that a court may not "dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own." *Id.* at 1252. Indeed, defendant acknowledges as much in its reply brief. *See* Def.'s Reply, ECF No. 14 at 21. ("[Ms. Sellers] is correct that there is no *per se*

prohibition on discrete acts being part of a hostile work environment claim."). As long as Ms. Sellers has alleged a hostile work environment, and at least one of the non-selection acts occurred within the 45-day window, she may rely on the other non-selection claims in her hostile work environment claim regardless of when they occurred. *See Allen v. Napolitano*, 774 F. Supp. 2d 186, 204-06 (D.D.C. 2011)(considering up to seven non-selection claims in hostile work environment analysis).

As to defendant's bootstrapping argument, in Ms. Sellers' complaint, she alleges public humiliation, and several instances of actions that she alleges interfered with her work performance for which she repeatedly asked her supervisor to intervene. *See generally* Compl., ECF No. 1. In fact, she was told that it would take nothing short of physical assault on the part of her abuser before DHS intervened. *See id.* ¶ 41. This is not an instance of a plaintiff "attempt[ing] to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim." *See Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007)(explaining that, as a general matter, this jurisdiction frowns on such attempts). Because Ms. Sellers has alleged at least one non-selection claim within the 45-day window, *Morgan* applies and her other non-selection claims may proceed as part of her hostile-work environment claims.

Accordingly, the Court will **DENY** defendant's motion for

judgment on the pleadings as to Ms. Seller's post-investigation hostile work environment non-selection claims.

### D. Non-Selections for Requested Detail Assignments

Finally, defendant argues that Ms. Sellers has no Title VII claim based on the agency's decision to deny her a specific detail assignment because that is not an adverse employment action cognizable under the statute. Def.'s Mot., ECF No. 10 at 19. The D.C. Circuit has instructed that [a]dverse employment actions are not confined to hirings, firings, promotions, or other discrete incidents." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006)(citation omitted). So long as a plaintiff meets the statutory requirement of being "aggrieved" by an employer's action, 42 U.S.C. § 2000e-16(c) (2000), a court may not "categorically reject a particular personnel action as nonadverse simply because it does not fall into a cognizable type." *Id.* (internal citations omitted)

To the extent the defendant argues for a categorical rule that the denial of a detail assignment generally does not constitute an adverse employment action, under *Holcomb* this Court cannot endorse such a rule. *Id.* Courts in this District have found that a denial of a detail assignment is cognizable under the statute as a claim for discrimination if the non-selection has "materially adverse consequences . . . such that a reasonable trier of fact could find objectively tangible harm."

See *Nichols v. Truscott*, 424 F. Supp. 2d 124, 136 (D.D.C. 2006)(citing *Holcomb*, 433 F.3d at 902)). Courts have also recognized denial of detail assignment claims in the retaliation context. For example in *Browne v. Donovan*, a court refused to endorse the rule that the "failure to detail does not constitute an adverse employment action for purposes of Title VII's anti-retaliation provision." 12 F. Supp. 3d 145, 154 (D.D.C. 2014). The court instead engaged in a highly fact-specific analysis to determine whether the detail was an adverse employment decision and ultimately denied the defendant's motion to dismiss after analyzing the specific details of the position, the opportunities for advancement the position would provide, and whether the failure to detail might dissuade a reasonable employee from making or supporting a charge of discrimination. *Id.* (stating the failure to detail plaintiff into the Associate General Counsel position constituted an adverse employment action).

To be sure, when a plaintiff alleges the denial of a detail but only claims harms—or benefits—that are speculative, a court may find that the failure to detail was not an adverse employment action. *See Maramark v. Spellings*, No. 06–5099, 2007 WL 2935411, at *1 (D.C. Cir. Sept. 20, 2007) (denial of a five-month detail that might have allowed plaintiff to secure a permanent position was "too speculative to constitute an

objectively tangible harm"). However, Ms. Sellers has alleged detail assignments that included, among other things, promotion opportunities with increased pay. *See* Pl.'s Opp'n., ECF No. 13 at 44. At the pleading stage, it cannot be said that the benefits from the detail assignments she was denied are "too speculative to constitute an objectively tangible harm." *Maramark*, 2007 WL 2935411, at *1. Accordingly, the defendant's motion is **DENIED** as to Ms. Seller's detailed related non-selections, and Ms. Sellers may proceed on her Title VII claims based on the denial of specific detail assignments.

## IV. Conclusion

For the foregoing reasons, defendant's motion for partial judgment on the pleadings is **GRANTED IN PART** and **DENIED IN PART.** An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:   **Emmet G. Sullivan**
            **United States District Judge**
            **March 26, 2019**